IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                                    Case No.11-4090-JTM

BENJAMIN BOSTWICK KIRTLAND, III, *and*
MARY JEAN KIRTLAND,

Defendants.

MEMORANDUM AND ORDER

This is a civil action brought by the United States of America seeking avoidance of allegedly fraudulent transfers of property and property interests from defendant Benjamin B. Kirtland, III, to defendant Mary Jean Kirtland. This action is brought pursuant to 28 U.S.C. §§ 3301-3308 which provides various remedies for the United States to seek relief as to a transfer of property deemed to be fraudulent as to a debt owed to the United States. This Court has jurisdiction pursuant to 28 U.S.C. § 1345, and venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391.

Benjamin Kirtland, is incarcerated at Devens FMC, Ayer, Massachusetts, outside of this district. Before his incarceration, he lived in Connecticut for a few months. For several years prior to that, he resided in Kansas. Mary Jean Kirtland now resides in Cary, North Carolina, outside the district. She moved from the District of Kansas, where she had been a resident for several years, in June, 2011.

The United States filed its First Amended Complaint seeking to avoid these transfers on December 6, 2011. Defendant Mary Jean Kirtland timely answered the Amended Complaint on December 8, 2011. Benjamin Kirtland has neither answered nor otherwise pleaded.

On December 22, 2011, the United States propounded Requests For Admissions to Benjamin Kirtland, but he failed to respond.

Both the government and defendant Mary Jean Kirtland have moved for summary judgment. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

### The Criminal Proceedings

Benjamin Kirtland was employed by Kansas Athletics, Inc., in Lawrence, Kansas, as the Associate Athletic Director of Development from July 2004 to April 5, 2010. He was responsible for raising funds for the athletic department at the University of Kansas. Kansas Athletics, Inc. is a non-profit agency that handles the marketing and selling of University of Kansas athletic tickets, parking passes and clubhouse passes.

Benjamin Kirtland became aware of the federal criminal investigation of illegal ticket sales at the University of Kansas in December 2009 after Agents from the Internal Revenue Service and the Federal Bureau of Investigation contacted Lew Perkins, Athletic Director for the University of Kansas, inquiring about illegal sale of tickets to athletic events at the University of Kansas by employees of the Williams Fund and the Athletic Ticket Office.

The University of Kansas initiated a civil investigation into the allegation of illegal ticket sales to University of Kansas athletic events by employees of the Williams Fund and the Athletic Ticket Office in December 2009.

Kansas Athletics, Inc., initially retained attorney Robin Fowler to represent Benjamin Kirtland in the civil investigation being conducted by the University of Kansas.

The first of several subpoenas issued by the United States Attorney's Office directed to Benjamin Kirtland investigating the illegal KU ticket sales was issued in March 2010.

Benjamin Kirtland refused to be interviewed in the civil investigation being conducted by Kansas Athletics, Inc., on April 4, 2010, and, instead, resigned his employment. Kansas Athletics told Robin Fowler and Benjamin Kirtland that it would no longer pay attorney fees after he refused to be interviewed as part of the University's investigation.

Benjamin Kirtland personally retained Robin Fowler to continue representing him in the federal criminal case about the time he resigned his position.

The Final Report To James P. Pottorff, General Counsel, University of Kansas, was published on the internet on May 26, 2010. This report identified Benjamin Kirtland as one of the

3

employees having conducted illegal ticket sales and stated that losses to the University of Kansas were over $1million.

On November 17, 2010, the United States filed its one count indictment against Benjamin Kirtland, in the United States District Court, District of Kansas, Case No. 10-10178-03-WEB, charging him, and his co-defendants, with violations of Title 18, U.S.C. §§ 371 and 1349, conspiracy to commit wire and tax fraud. This indictment also contained a Forfeiture Notice and Allegation and requested judgment including, but not limited to, a money judgment between $3 and $5 million.

On February 24, 2011, Benjamin Kirtland filed a Petition To Enter Plea of Guilty in the criminal case and entered his guilty plea to count one of the indictment, Conspiracy To Defraud The United States Through Wire Fraud, Tax Obstruction And Interstate Transportation Of Stolen Property, 18 U.S.C. §§ 371 and 1343. The Change of Plea acknowledged that the plea of guilty subjected him to liability for a Special Assessment of $100.00 per count; a fine of $250,000.00; a maximum term of imprisonment not to exceed 20 years followed by a term of supervised release; and acknowledged significant loss to the victim Kansas Athletics, Inc. Further, Kirtland consented to a monetary forfeiture judgment in the amount of $2 million, for which he was jointly and severally liable with his co-defendants.

The Final Order Of Forfeiture And Imposition Of Forfeiture Judgment, was entered in the criminal case by Judge Wesley E. Brown on March 15th, 2011, in the amount of $2 million.

The Presentence Investigation Report as to Benjamin Kirtland was filed April 26, 2011. This report was prepared by the Probation Officer assigned and circulated to counsel for Benjamin Kirtland and the federal prosecutor, Richard L. Hathaway prior to being filed.

Kirtland's co-defendants, Kassie Liebsch, Rodney Dale Jones, Thomas Ray Blubaugh, and Charlotte Faye Blubaugh were sentenced, respectively, on March 30, March 31, April 11, and April 14, 2011. Kassie Liebsch was sentenced to 37 months imprisonment, Jones to 46 months, Thomas Blubaugh to 46 months, and Charlotte Blubaugh to 57 months. Each of the defendants was also subject to a $100.00 assessment, and each judgment included a $2 million Forfeiture Judgment for

4

which all named defendants are jointly and severally liable.[1] The court also ordered restitution in the following amounts, with a designated portion reserved for Kansas Athletics, joint and severally with the other co-defendants, and another portion to the Internal Revenue Service:

| Defendant | Total Restitution | Kansas Athletics | IRS[2] |
|---|---|---|---|
| Liebsch | $1,276,947.70 | $1,197,084.00 | $79,863.77 |
| Jones | 1,310,834.00 | 1,197,000.00 | 113,843.00 |
| T. Blubaugh | 1,109,403.20 | 841,111.29 | 268,292.00 |
| C. Blubaugh | 2,564,747.29 | 2,296,455.29 | 268,292.00 |

An Abstract of Judgment on the $2 million Final Forfeiture Order against Benjamin Kirtland Doc. 71, was filed in Johnson County, Kansas, on April 13, 2011, in Book 201184 at Page 3236.

Prior to April 22, 2011, Fowler and Richard Hathaway, Assistant United States Attorney, prosecutor on the criminal case reached an agreement in principal as to the Sentencing Agreement proposed by Benjamin Kirtland.

Prior to April 25, 2011, Fowler sent a draft Sentencing Agreement to Hathaway and another Assistant United States Attorney, Tanya Sue Wilson. On April 25, 2011, Benjamin Kirtland and his counsel executed the Sentencing Agreement in Case No. 10CR10178-03-WEB, which was then executed by the United States on April 26, 2011.

In the Sentencing Agreement, Benjamin Kirtland agreed not to appeal a sentence containing the following:

a. Imposition of a Special Assessment of $100.00;
b. No fine;
c. A monetary Forfeiture Judgment in the amount of $2 million, joint and several with co-defendants; and,
d. Restitution of $1,296,230.00, of which $1,197,084,00 was due to Kansas Athletics, Inc., joint and several with co-defendants; and $85,090.00 to the Internal Revenue Service individually.

---

[1] An Amended Judgment was filed on May 20, 2011, to redirect a portion of the restitution monies previously designated to Kansas Athletics, to National Fire Insurance of Hartford, the insurer of Kansas Athletics, Inc.

[2] For Liebsch and Jones, restitution to the IRS was imposed individually. Thomas and Charlotte Blubaugh are jointly and severally liable for the amount designated for IRS restitution.

5

e.  Payment of restitution to be made immediately, unless ordered otherwise by the Court.

f.  Agreed not to contest forfeiture allegations.

The Sentencing Agreement also provided that Defendant Kirtland further agreed to cooperate fully and truthfully with the United States as follows:

A.  Defendant agrees to cooperate fully with the United States Attorney's Office in the disclosure of assets and specifically to:

I)  Provide a financial statement on a form approved by the USAO that discloses all assets in which defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party, as well as any transfer of assets that has taken place since 2005.

ii)  Submit to an examination, which may be taken under oath and may include a polygraph examination.

iii)  Acknowledge that any waivers, consents, or releases signed by the defendant for purposes of the Presentence Investigation Report extends to the USAO.

iv)  Not encumber, transfer, or dispose of any monies, property or assets under defendant's custody or control, without approval from the USAO.

A second Abstract of Judgment for the $2 million Final Forfeiture Order against Benjamin Kirtland was filed in Connecticut, Ellington County Land Records, on April 26, 2011, in volume 424, at page 0298, no. 0895.

On May 11, 2011, a Restraining Order, was entered in Case No. 10CR10178-03-WEB, which provided as follows:

The Defendant Benjamin Kirtland, III,  Mary Jean Kirtland, and their agents, servants, employees, attorneys, and any other persons in active concert or participation with them, are immediately restrained, prohibited and enjoined from pursuing further action to transfer the real estate and personal property set forth in the Property Settlement Agreement of April 15, 2011, entered in the District Court of Johnson County, Kansas, in case number 11CV00712 and the real and personal property set forth in the Financial Statement the Defendant completed for the United States which is dated March 23, 2011, or further attempting or completing any action that would affect the availability, marketability or value of said property, including but not limited to foreclosing, selling, assigning, pledging, distributing, encumbering, wasting, secreting or otherwise disposing of, or removing from the jurisdiction of this Court, all or any part of their interest, direct or indirect, in the subject property.

On May 12, 2011, Benjamin Kirtland was sentenced in Case No. 10CR10178-03-WEB. The Court ordered incarceration for 57 months; a special assessment in the amount of $100.00; and, restitution in the total amount of $1,293,167.00. He is jointly and severally liable to Kansas Athletics and National Fire Insurance of Hartford for $1,208,077.00 of this amount with his co-defendants, and is individually liable to the Internal Revenue Service in the amount of $85,090.00. The judgment also included the $2 million forfeiture judgment, for which he is jointly and severally liable with all co-defendants. The criminal judgment was entered on May 20, 2011.

The Notice of Lien For Fine And/Or Restitution against Benjamin Kirtland was filed in Johnson County, Kansas, Register of Deeds, on May 27, 2011, in Book 20115 at Page 7553. A second Notice Of Lien For Fine And/Or Restitution against Benjamin Kirtland was filed in Connecticut, Ellington County Land Record, on June 9, 2011, in volume 425, at page 0285, no. 1254.

The Special Assessment against Benjamin Kirtland has been paid. In addition, certain amounts have been collected from Defendant Kirtland and from his codefendants, leaving a balance due on his restitution judgment of $1,132,847.05, as of December 19, 2011.

*The Transfers*

Benjamin Kirtland earned a Bachelor of Arts and a Masters degree from the University of Connecticut in the early 1980's. He earned approximately $175,000.00 per year through his employment with the Kansas Athletics.

Mary Jean Kirtland received a Bachelor's Degree from the University of Connecticut in 1981, and works as a registered nurse.

The Kirtlands were married in Connecticut in August 1983, and have four adult sons, now aged 24, 23, and twins 20.

Mary Jean Kirtland and the younger sons moved from North Carolina to Kansas in 2005 because of defendant Kirtland's employment with Kansas Athletics. Benjamin Kirtland had moved to Lawrence, Kansas, prior to the arrival of his family.

Benjamin Kirtland always handled his financial planning and investing personally. Mary Jean Kirtland handled her financial planning and investing personally.

The Kirtlands employed an accountant to do their annual federal and state income tax returns for all years from 2005 to present. In addition, they filed joint tax returns each year during their marriage.

In January, 2010, Benjamin Kirtland had assets worth less than $900,000.00. Mary Jean Kirtland knew the approximate value of the assets Benjamin Kirtland owned individually and jointly with her in January 2010, and she knew the approximate value of assets she owned individually and/or jointly with Benjamin Kirtland as of January 1, 2010.

Benjamin Kirtland became aware of the federal criminal investigation of his activities no later than December 2009.

Shortly before Easter of 2010, Benjamin told Mary Jean that he had sold 12 seasons tickets to 12 University of Kansas donors that would not have otherwise been entitled to these tickets. He also told her that other employees for whom he was responsible committed violations and that as a consequence he was quitting his job with Kansas Athletics, Inc.

Mary Jean Kirtland became aware of the federal criminal investigation of Benjamin Kirtland in early April 2010. The Kirtlands discussed the criminal investigation in early April.

Beginning in early 2010, Benjamin Kirtland and Mary Jean Kirtland liquidated substantial financial accounts and the cash value of several life insurance policies owned by Benjamin Kirtland.

Mary Jean Kirtland knew that Benjamin Kirtland refused to be interviewed in the civil investigation being conducted by Kansas Athletics on April 4, 2010. She was also aware that after Benjamin refused to be interviewed as part of the University's civil investigation, the University of Kansas and Kansas Athletics announced it would no longer pay for his legal representation. And she

knew that Benjamin had then personally retained Robin Fowler to continue representing him in the KU ticket sales matter, including the possible federal criminal case.

Benjamin Kirtland resigned his employment with the Kansas Athletics in Lawrence, Kansas, on April 5, 2010. Mary Jean Kirtland was aware of the resignation at the time, and she and Benjamin had discussed the resignation before it occurred. The Kirtlands also discussed their individual and joint assets, and how to pay bills prior to the resignation.

The University's Final Report the General Counsel identified Benjamin Kirtland as one of the employees involved in illegal ticket sales to sporting events at the University of Kansas and state that losses to the University of Kansas were approximately $1 million.

In the spring of 2010, the news media in the Kansas City, Kansas, and Lawrence, Kansas, areas covered the released information on the civil investigation conducted by the University of Kansas.

Mary Jean Kirtland was generally aware of the many news releases on the civil investigation conducted by the University of Kansas.

On or about June 10, 2010, Benjamin Kirtland transferred his 100% ownership interest in a Northwestern Mutual account in the amount of $50,469.24 to another account owned by Mary Jean Kirtland. All the monies in the first Northwestern Mutual were deposited in that account at the direction of Benjamin Kirtland. Some monies deposited in this account were moved from a joint checking account owned by the Benjamin and Mary Jean Kirtland. Mary Jean Kirtland did not pay any monies to Benjamin for the transfer of his 100% ownership interest in Northwestern account, and Mary Jean Kirtland knew before the transfer that her husband was facing federal criminal charges.

Benjamin Kirtland directed the expenditure and disposition of the funds from the Northwestern Mutual account after ownership was transferred to Mary Jean Kirtland. Some of the monies from this account were used to pay a portion of the settlement with the University of Kansas

and some was used to pay ongoing fees to Benjamin Kirkland's criminal attorney. The balance of the monies is in the possession of Mary Jean Kirtland.

Benjamin and Mary Jean Kirtland filed joint amended federal tax returns for the tax years 2006, 2007 and 2008 in July and August 2010 claiming as income a certain amount of money from the theft of KU tickets as income for each of those years. The additional money paid the Internal Revenue Service was due as the result of Benjamin Kirtland's participation in the illegal sale of KU athletic tickets.

The additional tax paid for 2006 was $3,784.00; 2007, $4,414.00; and 2008, $5,858.00. The total tax paid with these amended returns was $16,056.00.

Benjamin and Mary Jean Kirtland lived together in their Lenexa, Kansas, home until September 2010, when Benjamin Kirtland moved to Connecticut.

On October 10, 2010, Benjamin Kirtland and Kansas Athletics entered into a settlement agreement requiring the payment of $63,000.00. Of that amount one-half was paid in November 2010, with the remaining balance being paid on or before January 31, 2011.

Benjamin Kirtland traveled to Kansas City, Kansas, to the family home a few times after he moved to Connecticut in September 2010. In addition, Benjamin and Mary Jean Kirtland occasionally kept in touch by telephone after he moved to Connecticut in September 2010.

In late October, 2010, Defendant Mary Jean Kirtland made the decision to file for divorce. In the best interest of her adult children, the divorce filing was deferred until after the Christmas and New Years holidays.

Mary Jean Kirtland knew the scope of the federal criminal charges against Benjamin Kirtland prior to or at the time the indictment was filed in November 2011. She learned of the contents of the one count federal indictment about the time it was filed. She did not believe the restitution amount would apply to her husband, Benjamin Kirtland.

Benjamin Kirtland contributed some monies to payment of the indebtedness on the family home in Kansas even after he moved to Connecticut.

Benjamin Kirtland had assets with a net value of less than $750,000.00 as of January 1, 2011.

On or about January 25, 2011, Mary Jean Kirtland filed a divorce action against Benjamin Kirtland in Johnson County District Court, District of Kansas, Case No. 11-00712. At the time of filing, Benjamin and Mary Jean Kirtland knew that Benjamin was facing federal criminal charges that might result in him receiving a term of imprisonment and substantial monetary impositions upon disposition of the case.

The next day, Mary Jean Kirtland, through her counsel, advised Benjamin Kirtland that the divorce action had been filed. Her counsel asked Mr. Fowler to obtain a Voluntary Entry of Appearance and Waiver of Service of Process from his client. Mary Jean Kirtland also requested that her husband provide a financial statement.

Defendants Kirtland owned 24 shares of Reynolds American stock in November 2010. The stock did a 2 for 1 stock split on or about November 15, 2010, yielding the Kirtland 48 shares of stock. Benjamin Kirtland transferred his joint ownership interest in all of their 48 shares of Reynolds American stock to Mary Jean Kirtland on or about February 7, 2011.

On February 7, 2011, Reynolds American stock was trading at or about $31.80 per share for a total value for the 48 shares of approximately $1,526.40. Kirtland had been indicted in the federal prosecution prior to his transfer of his interest in the Reynolds American stock to his wife. Mary Jean Kirtland did not pay any monies in exchange for this transfer, and she knew before the transfer that her husband had been indicted on federal criminal charges and that he faced possible incarceration and monetary impositions. At the same time, Benjamin Kirtland knew that he had or would incur debts beyond his ability to pay.

Mary Jean Kirtland knew, at the time it occurred, that Benjamin Kirtland entered a Petition To Enter Plea to guilty in the federal criminal case on February 24, 2011, and knew on or before that date, that Benjamin Kirtland was preparing to file the petition. She knew, on or before March 15, 2011, that the Final Order Of Forfeiture And Imposition Of Forfeiture Judgment, was entered against Benjamin Kirtland in the criminal case.

Benjamin Kirtland provided a completed Financial Statement of Debtor to the United States dated March 23, 2011.

Mr. Fowler, the criminal attorney for Benjamin Kirtland provided the Declaration Of Defendant Or Offender Net Worth & Cash Flow Statements which was completed by Benjamin Kirtland on or about March 24, 2011, to Ernest C. Ballweg, divorce attorney for Defendant Mary Jean Kirtland, by fax on March 25, 2011.

Mary Jean Kirtland was aware of the March, 2011 sentencing hearings of co-defendants Kassie Liebsch and Rodney Dale Jones, and the terms of incarceration imposed.

A joint tax return for the Kirtlands for the 2010 tax year, was prepared by Friedman, Kannenberg & Company, P.C. and dated April 1, 2011.

Benjamin Kirtland was represented in the divorce proceedings by Ellen S. Goldman, an attorney licensed to practice in the state of Missouri since 1978, and in the State of Kansas since 1995. He retained her for this representation in early April, 2011. The first billing for services was April 10, 2011.

Mary Jean Kirtland was aware of the April, 2011 sentencing hearings of co-defendants Thomas and Charlotte Blubaugh, and the terms of incarceration imposed.

The Property Settlement Agreement was presented to Mr. Fowler, criminal attorney for Benjamin Kirtland on April 1, 2011. At Ms. Goldman's request, petitioner's proposed settlement was revised to include a provision that in the event marital proceeds were derived from the sale of the marital residence exceeded $50,000.00, that the parties would equally divide any such proceeds over that amount.

In evaluating whether the settlement proposal was fair, just and equitable, Goldman advised that she took into consideration the fact that her client's employment had been terminated as a consequence of his own actions; that he could be incarcerated and would thereby be unable to provide maintenance and support which would otherwise be required pursuant to Kansas law and

the Johnson County Guidelines. In her opinion, the settlement as executed was fair, just and equitable and consistent with Kansas law and the Johnson County Family Law Guidelines.

On or about April 15, 2011,  Benjamin and Mary Jean Kirtland each executed separate signature pages for the Property Settlement Agreement.

The divorce case, District Court of Johnson County, Kansas, Case No. 11-00712 was heard on April 15, 2011.

A general picture of some of the Kirtland's assets and liabilities were revealed to the Honorable David W. Hauber, District Judge of the Tenth Judicial District at the divorce hearing conducted on April 15, 2011, by proffer offered by Mr. Ballweg. Mary Jean Kirtland and Benjamin Kirtland's attorney, Ms. Goldman, were also present at the hearing..

At the conclusion of the hearing, Judge Hauber found:

> Under the Court's equitable jurisdiction, the Court finds that this is a long-term marriage, and that in lieu of maintenance which could have approached - - - and the *Court would have awarded maintenance in the amount of $216,000.00 - - -*,  the parties have reached their own agreement, a property settlement agreement which is Exhibit 1.

> The Court finds that based on the record the parties are incompatible and are hereby divorced on that ground. The Court also finds that the parties' property settlement agreement has taken into account the circumstances in which the wife will be left, primarily, *with the debt in this relationship*, that they have, albeit, adult children who will be raised and have to go to college. The parties have taken care of that.

> And in accordance with the property settlement agreement , it takes into account the fact that there will be no maintenance and appropriately adjusts and equitably adjusts, in the Court's opinion, the division of property and assets. And the Court hereby finds that the property settlement agreement is fair, just, equitable and valid and incorporates it as part of its decree.

(Emphasis added).

The state district court approved the Property Settlement Agreement executed by the parties and it was filed on April 15, 2011.

Prior to executing the Property Settlement Agreement on or about April 15, 2011, Benjamin Kirtland had pled guilty to federal criminal charges which had resulted in the entry of a $2 million forfeiture judgment, and which he knew would result in a criminal conviction, incarceration, and an

order to pay an assessment, an order for substantial restitution, and a possible fine. Mary Jean Kirtland knew all of this, except that she mistakenly believed the forfeiture judgment was in the amount of $1 million.

Mary Jean Kirtland had examined and was aware of the value of the property and property interests that Benjamin Kirtland was transferring to her in the Property Settlement Agreement. At the time the Kirtlands executed the Property Settlement Agreement Mary Jean Kirtland knew that Benjamin Kirtland had incurred debts in the federal criminal case which exceeded his ability to pay.

The Property Settlement Agreement states that there is a transfer of certain real and personal property interests owned by Benjamin Kirtland, some held individually and some held jointly with Mary Jean Kirtland, to Mary Jean. The transferred real and personal property interests were worth about $520,000.00. Mary Jean Kirtland received from Benjamin:

A.  The marital home at 19001 West 98th Terrace, Lenexa, KS; valued by the parties at $535,000.00;

B.  The parties' three family vehicles valued at approximately $10,200.00;

C.  The balance of the Northwestern Mutual brokerage account valued at approximately $25,000.00;

D.  The Reynolds American stock valued at approximately $1,526.40

E.  70% of his TIAA-CREF retirement account valued at approximately $410,777.33;

F.  The jointly owned Bank of America and United Bank of Kansas accounts of unknown value;

G.  His interest in the Fairfield County Bank accounts valued at approximately $5,800.00;

H.  His interest in her Fidelity Retirement Accounts valued at approximately $76,800.00;

I.  His interest in her three life insurance policies identified as Travelers Insurance with a face value of $150,000.00; Universal Life with a face value of $50,000.00; and Metropolitan Life with an unknown face value.

Benjamin Kirtland kept:

A.   30% of his TIAA-CREF retirement account valued at approximately $176,000.00;

B.   A Diversified Investment account worth approximately $22,000.00;

C.   An ING account worth approximately $30,393.79;

D.   Two Fairfield County Savings IRAs worth approximately $14,170.09 and $6,500;

E.   Two Metropolitan Life policies with cash values of approximately $1,470.90 and $6,600.00;

F.   Four Hartford Life Insurance policies with cash values of approximately $1,517.76, $1,297.68, $948.04, and $1,438.68.

The only debt owed by Kirtlands at the time of the divorce were the two mortgages on the marital home in of approximate amounts of $301,000.00 and $54,000.00.

The state court was not provided with a balance sheet of Defendant Kirtlands' assets and liabilities either as a pleading in the file, or at the time of the divorce hearing.

Benjamin and Mary Jean Kirtland examined and were aware of the value of the transferred property and property interests.

Pursuant to the Property Settlement Agreement, Benjamin Kirtland transferred his ownership interest in the following real property to Defendant Mary Jean Kirtland: His undivided one-half interest in the marital residence located at 19001 West 98th Terrace, Lenexa, Kansas, legally described as:

FALCON VALLEY, 5th plat, Lot 101, Lenexa, Johnson County, Kansas, more commonly known as 19001 West 98th Terrace, Lenexa, Kansas.

At the time of the divorce, Benjamin Kirtland's TIAA-CREF retirement account was worth approximately $521,000.00. All contributions to the TIAA-CREF retirement account were made through his employment; Mary Jean Kirtland, did not contribute any monies to that account.

Pursuant to the Property Settlement Agreement, or prior to the divorce, Benjamin Kirtland transferred his ownership interest in the following personal property to Mary Jean Kirtland:

a.   His ½ joint ownership interest in the following vehicles:

2002 Chevrolet Impala LS...; 2002 Chevrolet Trailblazer...; 2006 GMC Envoy ....

15

b.  his ½ joint ownership interest in twenty-four shares of Reynolds American stock worth approximately $600.00.

c.  The remaining balance of the Northwestern Mutual brokerage account which was stated as approximately $20,000.00.

d.  His 100% ownership interest in an amount equal to 70% of his TIAACREF retirement account, with all losses and gains incurred upon said sum from and after April 15, 2011, which was worth approximately $364,700.00;

e.  Certain savings accounts; and

f.  Certain checking accounts.

Mary Jean Kirtland did not pay any money to Benjamin for any of the interests of the real and personal property transferred by him.

The parties' marital real estate which was awarded to wife as a consequence of the divorce became a financial burden. The real estate was ultimately sold on or about October 28, 2011, and wife was required to pay the sum of $6,462.14 to accommodate the sale.

The revision of the settlement which was requested by Benjamin Kirtland's attorney ultimately became a moot point as the real estate proceeds were negative.

As of January, 2010, Benjamin and Mary Jean Kirtland jointly owned a 2002 Chevrolet Impala LS, a 2002 Chevrolet Trailblazer, and a 2006 GMC Envoy SLE.

Benjamin Kirtland traded University of Connecticut season basketball tickets to a car dealer in Connecticut for the Trailblazer and the Envoy SLE when those vehicles were new.

Benjamin Kirtland transferred his joint ownership interest in the Trail Blazer after the Property Settlement was executed. The new title to Mary Jean Kirtland was issued on May 17, 2011. He also transferred his joint ownership interest in the Impala and the Envoy to Mary Jean Kirtland prior to July 9, 2011, which was the date issuance of new Certificates Of Title issued to Mary Jean Kirtland.

Mary Jean Kirtland did not pay Benjamin Kirtland any money for the transfer of his joint ownership interest in any of the three vehicles.

16

At or before the time Benjamin Kirtland transferred his joint ownership interest in the three vehicles, both Kirtlands knew that Benjamin had been sentenced in federal court on the criminal charges and judgment had been entered. At the same time, Benjamin knew that he had or would incur debts beyond his ability to pay.

Defendant Mary Jean Kirtland received a credit of approximately $3,000.00 for trade value when she traded the 2002 Chevrolet Trailblazer for a Honda CRV in August, 2011.

The TIAA-CREF account of Benjamin Kirtland consists of several protected retirement accounts of Benjamin Kirtland.

Benjamin continued to contribute monies to pay the real estate debt on the family home in Kansas even after the property settlement agreement was filed.

Mary Jean Kirtland did not pay any money to Benjamin Kirtland for the property and property interests he transferred to her through the divorce proceedings. At the time Benjamin Kirtland made each of the property settlement transfers to Mary Jean Kirtland, she knew that he had incurred debts beyond his ability to pay in the federal criminal case.

Mary Jean Kirtland was the wife of Benjamin Kirtland until the divorce was granted on April 15, 2011. She also attended the sentencing hearing of Benjamin Kirtland on May 12, 2011.

Throughout the criminal investigation and case the news media in the Kansas City, Kansas, and Lawrence, Kansas areas covered the released information. Mary Jean Kirtland was aware of the news releases on the criminal case.

### *Conclusions of Law*

Both parties have moved for summary judgment. The United States seeks a determination that Benjamin Kirtland's transfers were fraudulent transfers under three alternate provisions under the FDCPA.

Defendant Mary Jean Kirtland presents three arguments in her motion for summary judgment. First, she contends that the June 2010 transfer of the Northwestern Account was made so that she could pay household expenses, and thus was undertaken in good faith and for reasonably

equivalent value. Second, she contends that the transfers adopted in the property settlement cannot be voided, as they represent the fair and equitable resolution of the couple's assets. Third, she contends that the FDCPA should not apply in this action, since the United States is seeking restitution on behalf of a private entity.

The court first addresses the threshold question applicability of the FDCPA, and finds that the United States may present its claims under that statute to collect restitution on behalf of Kansas Athletics. Pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3163(a), the United States is specifically authorized to use various methods, including the FDCPA, to collect on unpaid fines. Section 3163(f) expands this authority beyond fines to include similar remedies "for the enforcement of any order of restitution." Correspondingly, the FDCPA expressly includes in the amounts which the government can collect sums due as "restitution." 28 U.S.C. § 3001(c). Thus, the government is authorized to use FDCPA procedures to collect restitution awards to non-governmental entities. *See United States v. Witham*, 648 F.3d 40, (1st Cir. 2011) (Cir. 2002); *United States v. Mays*, 430 F.3d 963 (9th Cir. 2005); *United States v. Phillips*, 303 F.3d 548 (5th Cir. 2002); *United States v. Kollintzas*, 303 F.ed 548 (7th Cir. 2002).

The government contends that the court should invalidate as fraudulent the transfers of Benjamin Kirtland's interest in the Northwestern Mutual account, valued at $50,469.24, his interest in the Reynolds American stock, valued at approximately $1,526.40, and the properties identified in the Property Settlement Agreement, including the family vehicles and the TIAA-CREF account, valued at $10,200.002 and $410,777.333, respectively.[3] It argues that these transfers are fraudulent under 28 U.S.C. § 3304. Specifically, it contends that the transfers are voidable under any of three separate provisions of the statute, either (a) § 3304(a)(1), which prohibits an insolvent person from transferring property after a debt exists; (b) § 3304(b)(1)(A), which prohibits transfers made with

---

[3] The government does not include in its motion the transfer of the ownership interest in the marital home, valued at $535,000 with liens of approximately $355,000, as the ownership interest has been liquidated and the government's lien has been released.

the intent to defraud a creditor; or § 3304(b)(1)(B), which prohibits transfers by a person with insufficient assets, without obtaining reasonably equivalent value in return.

The statute provides:

(a) **Debt arising before transfer**. — Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if —

   (1)  (A)  the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and

         (B)  the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation; or

   (2)  (A)  the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time; and

         (B)  the insider had reasonable cause to believe that the debtor was insolvent.

(b) **Transfers without regard to date of judgment**. — (1) Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation —

   (A)  with actual intent to hinder, delay, or defraud a creditor; or

   (B)  without receiving a reasonably equivalent value in exchange for the transfer or obligation of the debtor —

      (i)  was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

     (ii)  intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

The statute also identifies several factors relevant to the determination of whether a transfer was intended as fraudulent for purposes of § 3304(b)(1)(A). Specifically, it provides that:

consideration may be given, among other factors, to whether —

(A) the transfer or obligation was to an insider;

19

(B) the debtor retained possession or control of the property transferred after the transfer;

(C) the transfer or obligation was disclosed or concealed;

(D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(E) the transfer was of substantially all the debtor's assets;

(F) the debtor absconded;

(G) the debtor removed or concealed assets;

(H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

In her Response to the government's motion, Mary Jean Kirtland does not directly address the specific elements of any of the three alternative grounds for deeming the transfers fraudulent under § 3304. Rather, she emphasizes that the sale of the marital home was fair (Dkt. 47, at 3), that Benjamin Kirtland also received some property in the settlement and complains of the "extreme harshness" of the government's position (*id.* at 4), and generally emphasizes that the property was fairly divided by an order of the state court. These arguments are more fully presented in the defendant's motion for summary judgment in which she asserts her good faith defense; the court addresses them below. For present purposes, it may be noted that the the defendant's discussion of § 3304 is so brief that it may be quoted entirely:

> Counsel for Mary Jean respectfully submits that upon a review of all factors including those contemplated by § 3304(b)(1) that the court can only conclude there is no intent to defraud. The retirement funds have yet to be transferred pursuant a QDRO as required by law. Mary Jean is an ex-spouse and should no longer be considered as an "insider." The Property Settlement Agreement makes it clear that Mr. Kirtland has absolutely no control over any of the property transferred. The transfers were clearly disclosed and not concealed as they were a public record. The

20

transfers did not involve substantially all of Mr. Kirtland's assets as revealed by the Property Settlement Agreement. There was no attempt by either party to remove or conceal assets and the consideration given for the transfers was an equivalent value.

(*Id.*, at 8-9). It must be noted that these factors solely address alleged fraudulent transfers under § 3304(b)(1)(A). They do not address the government's claim that the transfers were fraudulent as lacking reasonably equivalent value under either § 3304(b)(1)(B) or § 3304(a)(1).

The court finds that the government is entitled to an order avoiding the designated transfers under § 3304(b)(1)(B) or § 3304(a)(1) as transfers without reasonably equivalent value after a debt to the United States. While Benjamin Kirtland received some property as a result of the divorce proceedings, the value of that property is small compared to that transferred to the defendant.

The uncontroverted facts support the determination that the transfer of the Northwestern Account did not occur for reasonably equivalent value. In the context of the FDCPA, the value of a transaction is defined:

(a) **Transaction**.– Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

(b) **Reasonably equivalent value**.– For the purposes of section 3304 and 3307, a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of such interest upon default under a mortgage, deed of trust, or security agreement.

(c) **Present value**.–A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is in fact substantially contemporaneous.

"Reasonably equivalent value means that 'the debtor has received value that is substantially comparable to the worth of the transferred property.'" *United States v. Loftis*, 607 F.3d 173, 177 (5th Cir. 2010) (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 548 (1994)). Because value is determined from the economic perspective of the creditor, *In re Hinsley*, 201 F.3d 638, 643-44 (5th Cir. 2000), the court must focus on the net effect of the transfer to the debtor's estate. *Loftis*, 607

21

F.3d at 177). A subjective emotional benefit for the transferor debtor is not value. *United States v. Vancampen*, No. 95-1436-FGT, 1997 WL 873537, *4 (D. Kan. July 9, 1997).

Accordingly, the transfer of Benjamin Kirtland's 100% interest in the Northwestern Account was not a transfer for reasonably equivalent value, as it served to markedly reduce the debtor's estate without any corresponding economic improvement in the funds available to Benjamin's creditors. Further, even though the transfer of the interest in the Northwestern Account occurred prior to judgment in the criminal action, the debt was incurred once the criminal proceeding was commenced. *See United States v. Walston*, No. 07-580-5, 2011 WL 38736932, *3 n.2 (N.D. Ill. Aug. 31, 2011) (for purposes of FDCPA, the government becomes creditor when it acquires "a right to payment, even though the right was not reduced to judgment at the time of the transfers").

The cases cited by the defendant in her motion for summary judgment are distinguishable. For example, in *United States v. Goforth*, 465 F.3d 730 (6th Cir. 2006) the court held that an arrangement for the payment of household expenses could constitute reasonably equivalent value given the uncontradicted evidence that this was the intent and effect of the arrangement. In the present case, by contrast, the putative agreement to pay for living expenses was not a part of the stipulated facts, and the defendant offers no accounting of the expenses actually paid. Indeed, the claim is directly contradicted by uncontroverted evidence that after the transfer, Benjamin and Mary Kirtland continued to live together for some four months, that Benjamin Kirtland retained actual control over the transferred funds, and that a substantial portion of the funds were used to pay for Kirtland's attorney fees and to settle a portion of the civil claim by Kansas Athletics — payments which cannot be considered typical "family living expenses."

However, for purposes of resolving the government's summary judgment motion, the court finds that the plaintiff has failed to demonstrate that the designated transfers are also avoidable under § 3304(b)(1) as transfers undertaken with an actual intent to defraud. Ordinarily intent is a question for the jury, and summary judgment finding that a party has acted with an actual intent to defraud under the FDCPA is available only in rare cases. *In re Ford*, No. 93-2488, 1994 WL 2422156, *2

22

(4th Cir. June 6, 1994) (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414-15 (4th Cir.1979). Ordinarily, "[t]he mere presence of the [§ 3304(b)(2)] statutory factors is not sufficient to determine this issue as a matter of law." *United States v. Vernor*, No. SA-03-CA-511-FB, 2005 WL 3465847, *4 (W.D. Tex. Feb. 11, 2005) (denying summary judgment even though the transferor's rationale for his actions was "tenuous" and the government had "present[ed] ample argument why this reason is defective"). *See also In re Phillips & Hornsby Litig'n*, 306 F.Supp.2d 631, 639 (M.D. La. 2004) (denying summary judgment even though multiple factors "arguably do suggest" transferor acted with intent to defraud).

Accordingly, while many of the § 3304(b)(2) factors do suggest the existence of an intent to defraud, perhaps even strongly so, the court does not find that the government is entitled to summary judgment on the issue, and given its other findings, the issue is not controlling. The government is entitled to avoid the transfers §§  3304(a) and (b)(1)(A).

The court finds that the defendant is not entitled to assert the good faith defense contained in 28 U.S.C. § 3307. Under this statute, "A transfer or obligation is not voidable under section 3304(b) with respect to a person who took in good faith and for a reasonably equivalent value or against any transferee or obligee subsequent to such person."

The government argues that the defense is inapplicable because of a lack of good faith on the part of the defendant. The government contends that at the time of the transfers, Mary Jean Kirtland knew of the allegations against her husband, and knew of his impending criminal punishment. (Dkt. 45, at 18). The record amply supports this conclusion. The government also asserts that, for purposes of § 3307, "[g]ood faith requires that the transferee was unaware of the debtor's debt to the United States." However, the government supplies no authority for this principle that a § 3307 defense may be defeated merely by knowledge of the debt to the United States. Courts which have addressed § 3307 have held that the defense is defeated by knowledge of the transferor's fraud, not merely knowledge of the debt. *See SEC v. Haligiannis*, 608 F.Supp.2d 444, 450 (S.D.N.Y. 2009) (for good faith defense "a transferee must take without knowledge of the transferor's fraudulent intent"). Again,

23

the issue turns on intent, the court finds that whether defendant did or did not have good faith in receiving the transfers would be an issue for the trier of fact.

But the issue is not dispositive because the court finds that § 3307 provides no shield for the transfers given the second condition provided in the statute — that the transfers occurred for reasonably equivalent value. As discussed previously, the uncontroverted facts establish that the transfers occurred without an exchange for reasonably equivalent value. Again, the court considers the exchange free from considerations of love and spousal support which might govern state domestic relations law. *See Morris v. Vansteinberg*, No. 01-15474, 2003 WL 23838125, *4 (citing *Zubrod v. Kelsey*, 270 B.R. 776 (10th Cir. BAP 2001) and finding that such domestic relations considerations were not controlling for purposes of avoiding preferential transfers under 11 U.S.C. § 548(a)(1)). Rather, as noted earlier, the transfers must be considered from the perspective of Benjamin Kirtland's creditors, and it is uncontroverted that from this perspective Benjamin's estate did not receive reasonably equivalent value for the transfers.

The reasonably equivalent value calculation is a purely economic assessment of what the debtor gave away and what he received. In this case, it is clear that what Benjamin received is a small fraction of what he gave away.

Finally, the court rejects Mary Jean Kirtland's request that it "affirm" the decision in the divorce case, a procedure which is neither necessary nor appropriate under the FDCPA. Notably, the defendant's discussion of the transfers in her Memorandum in Support of her Motion for Summary Judgment contains no mention of the specific requirements of 28 U.S.C. § 3307. Rather, Mary Kirtland simply argues that the divorce was fair and valid under Kansas law. But this has no bearing on the court's determination of whether the transfers were invalid under *federal law*. The mere fact the fraudulent transfers have been formalized by a state-court approved property settlement provides no immunity from federal law. *See United States v. Barrier Industries*, 991 F.Supp. 678, 681 (S.D.N.Y. 1998). Pursuant to the Supremacy Clause of Article VI, the FDCPA controls the validity

24

to the transfers of a debtor of the United States, and the court must examine the property settlement within the contours of § 3307(a).

Once the transfers are so examined, it is apparent they are not protected by the good faith defense of § 3307(a), as the property was transferred without any reasonably equivalent economic return to the debtor's estate. Mary Jean Kirtland, who was well aware of her husband's precarious legal and financial situation, paid nothing to Benjamin for the transfers of the real and personal property adopted in the property settlement. She knew that Benjamin faced a forfeiture order in excess of $1 million, and that he faced likely incarceration. At the time of the divorce, all of Benjamin's co-defendants had been sentenced to prison terms and ordered to pay restitution in amounts approaching or in excess of $1 million.

The court therefore finds that pursuant to the FDCPA, the United States is entitled to avoid the transfers of the Benjamin Kirtland's interest in the Northwestern account, the Reynolds American stock, the TIAA-CREF account, and the two remaining family vehicles, and a money judgment against defendant Mary Jean Kirtland for the portion of the Northwestern account no longer available and for the value of the family vehicle previously traded in on a new car.

IT IS ACCORDINGLY ORDERED this 27th day of September, 2012, that the plaintiff's Motion for Summary Judgment (Dkt. 43) is denied; the defendant's Motion for Summary Judgment (Dkt. 39) is granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

25